(No. 26918.—■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VERNON ANDERSON, Plaintiff in Error.

*Opinion filed March 16, 1943.*

MARTIN O. WEISBROD, and HARRY J. BUSCH, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN

T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Vernon Anderson, was indicted in the criminal court of Cook county for assault with intent to rape. He was tried by the court without a jury, found guilty and sentenced to imprisonment in the penitentiary for the statutory term of one to fourteen years, with the recommendation that the minimum and maximum limits of imprisonment be five and ten years, respectively. Anderson prosecutes this writ of error.

The complaining witness, 20 years of age, an employee of the Belmont Radio Corporation, attended a moving-picture theater alone on Saturday evening, May 23, 1942. She left the theater about 12:30 A. M., May 24, boarded a westbound streetcar and rode to its terminal at the intersection of Central and Fullerton avenues. About a half block west of Central avenue, while walking on the north side of Fullerton avenue in the direction of her home some five blocks distant, defendant approached the young woman stealthily from the rear, threw his arms around her, put one hand over her mouth and commanded her to keep quiet. According to the witness, she jerked loose, started screaming and struggling, and defendant pushed her onto the prairie adjoining the sidewalk and threw her to the ground in the weeds. The witness testified that she screamed when he got on top of her, and that he told her to keep quiet, tried to shut her mouth and, at the same time, put his hand in her mouth whereupon she bit his little finger. As soon as he freed his finger, the witness commenced to scream again and, at this juncture, the occupants of a passing automobile were attracted by her cries for help. Herbert Kietzer and George Kittick, and their wives, were in the car. From Kietzer's testimony it appears that he saw defendant and the complaining witness

before the car stopped and that when he alighted they were rolling in the "park;" that he heard her screaming and ran to the couple; that when he was about 20 yards from them defendant ran across the prairie, and that he pursued defendant about 30 yards and caught him. Kietzer testified further that defendant accused him of breaking his finger. He added that defendant was always trying to make some remark, and that he and his companion told him to "shut up." Kietzer dragged defendant to the sidewalk and took him to a nearby store where he and Kittick summoned the police. Kittick testified that as he was driving west on Fullerton avenue he observed two persons standing on the sidewalk, "rather intimate," but did not pay much attention until he heard someone scream, and that he heard more screaming while Kietzer was running in the direction of the couple. Kittick joined Kietzer and assisted him in taking defendant to the store at the intersection of Central and Fullerton avenues. Police officers John Ryan and Walter Scully arrested defendant. In reply to officer Ryan's query as to whether he had attempted to attack the complaining witness, defendant replied, "I ain't going to say anything; you got me now," and, also, "I never saw her before." Ryan observed that defendant's hand had been bleeding and inquired "What happened to your hand?" According to him, defendant answered, "One of them men broke my finger." The officer also asked, "Did this girl bite it?" To this question, defendant replied, "I had nothing to do with the young lady." He indicated his desire to visit a doctor. As defendant was being placed in the squad car, he dropped a half-pint bottle of whisky from which "about two drinks" had been taken. Officer Scully testified that when he talked with defendant at the police station the latter professed ignorance concerning the attack, saying he was not even present and maintaining that all he remembered was that he played cards on Saturday evening, beginning at 9:00 o'clock. The complaining witness

expressed the opinion that defendant might have had something to drink but that he was not very intoxicated. She also stated that defendant did not touch the purse she was carrying.

Defendant was employed as a truck driver by an excavating contractor. May 23, upon finishing work between 4:30 and 5:00 o'clock in the afternoon, he repaired to a tavern which he frequently visited and drank beer with some fellow employees. He then went to another tavern where he had two drinks of whisky and two drinks of beer before going to his home for his evening meal. Between 8:30 and 9:00 o'clock, he returned to the second tavern to make a telephone call. Defendant stated that he joined three men, unknown to him, and played pinochle with them; that he and the others drank whisky and beer while engaged in the card game, and that he did not know how long he remained in the tavern. According to defendant, he did not remember leaving the tavern or purchasing the half pint of liquor found on his person when apprehended. In short, the defendant testified that the next thing he recalled was awakening in the police station.

Defendant insists that the evidence does not sustain the judgment. The testimony recounted discloses that the complaining witness was assaulted by defendant in the middle of the night on a lonely street beyond the end of a streetcar line; that the witness resisted and, as the result of her resistance and cries, two men passing by in an automobile came to her rescue, and that when defendant saw these men approaching he fled across the prairie. Admittedly, an assault was proved. Defendant urges, however, that evidence of his intent to commit rape is lacking. Specifically, he claims that he was so intoxicated he could not form any intent. In a prosecution for assault with intent to commit rape, the question whether the assault was made with the intent charged in the indictment is a fact question to be determined from all the evidence in the case. (*Peo-*

*ple* v. *Maher*, 377 Ill. 488; *People* v. *Makovicki*, 316 id. 407.) The specific intent is the gist of the offense, and such an assault must be shown by evidence that if the purpose had been accomplished the crime would be rape. An express intent, however, need not be proved, and where the assault is shown, as here, the intent may be inferred from the acts, as well as from the words, of the defendant during the assault. Manifestly, the fact that an accused afterwards abandons his purpose does not relieve him from criminal liability. (*People* v. *Maher, supra; People* v. *Canonica*, 370 Ill. 441; *People* v. *Garafola*, 369 id. 232; *People* v. *McKinnie*, 328 id. 631.) The complaining witness was carrying a purse, and we deem it significant that defendant did not take nor attempt to steal it. Robbery was not his motive. Defendant's position and acts demonstrate that he intended to commit rape and to use such force as might be necessary to overcome resistance. He was sufficiently conscious to run away when Kietzer and Kittick dashed to the aid of the prosecutrix. Again, his replies to the police officer who arrested him shortly afterwards reflect a degree of intelligence not expected to be found in a person completely inebriated. From the testimony narrated, it is apparent that defendant was conscious and intelligent enough to form a criminal intent. That his specific criminal intent was to rape the complaining witness is beyond question.

Although the evidence amply supports the finding of guilty, the sentence to imprisonment carrying a recommendation of minimum and maximum limits of imprisonment cannot stand. The portions of the Sentence and Parole Act upon which the advisory recommendation was based are unconstitutional and void. (*People* v. *Montana*, 380 Ill. 596.) Accordingly, the judgment must be reversed and the cause remanded to the criminal court of Cook county, with directions to enter a proper sentence.

*Reversed and remanded, with directions.*