People of the State of Illinois, Plaintiff-Appellee, v. Edward Kolar, Defendant-Appellant.

Gen. No. 50,057.

First District, First Division.

January 7, 1966.

<br><br><br><br>

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Edward Kolar, appeals from a bench trial conviction of assault with intent to commit rape, contending that the evidence failed to prove, beyond a reasonable doubt, the intent involved.

In order to determine this issue it is necessary to review the evidence adduced at the trial. The prosecutrix testified that on the morning of May 16, 1964, at about 5:25, she was walking from her home to her place of employment, Arlene's Bakery at 2800 S. Keeler Avenue, Chicago, which was about two blocks away. A car she described as fitting the description of defendant's automobile, passed her and turned the corner at 28th Street. When she approached to within two "doors" of 28th Street, she saw defendant coming out of a gangway. He looked at her, and she at him; "[h]e was fixing his wristwatch." She passed him and as she got to an alley adjacent to Arlene's Bakery building and be-

tween Keeler Street and Tripp Avenue, "that's when [she] tried to turn around and he put his hands around [her] mouth and throat." She screamed, whereupon defendant said "Shut up or I'll kill you." She screamed again and bit his hand. He continued to drag her into the alley, then pushed her down and touched her "personal place." She heard someone else scream and the defendant ran away. Twenty minutes later, when the police brought defendant to the front of the bakery she viewed him and said "he looks like the fellow, I am sure he is him." The only remark defendant made was, "Look lady, I've been in the sh—house before. They'll throw me in on something like this." She further testified that the car that passed her in the street was then parked in front of the bakery.

A woman who lived on the second floor of a building, "kitty corner" from the bakery, testified that she had a view of the bakery from her window; that at the time she had raised her porch window shade and was preparing to have a cup of coffee; that she saw a car stop right alongside of the bakery building and a tall, slim fellow get out and hurry into the alley; that as she bent down to pick up her coffee she saw the prosecutrix a couple of feet from the alley, and that when she put her "coffee" down the prosecutrix was "gone"; that upon hearing loud screaming she opened her window and screamed. She then ran out to the street and saw the prosecutrix come out of the alley "hysterical." The car was still parked and remained so until the police came.

Another witness testified that she was also employed at Arlene's. At about 5:20 a. m. the car pulled up and a man, whom she identified as the defendant, got out and hurried toward the alley.

The only other witnesses were police officers who testified to the defendant's arrest, the identification by the prosecutrix, and the identification of defendant's car in front of the bakery.

Defendant relies on People v. Bush, 19 Ill2d 151, 166 NE2d 91 (1960), for reversal. The facts and circumstances in that case are somewhat different, but the court there sets forth what is necessary to prove an assault with intent to commit rape: (p 154)

> The essential elements of the crime are specific intent so to do and an assault of such nature as would amount to rape if the purpose of the assault had been accomplished. (People v. Liechron, 384 Ill 613). The gist of the offense is the specific intent charged. (People v. Marino, 388 Ill 203; People v. Cieslak, 319 Ill 221). An indecent assault, however aggravated, will not warrant a conviction of assault with intent to commit rape, without proof of an intention to have intercourse with a woman by force and against her will. (People v. Hiller, 7 Ill2d, 465; Newman v. People, 223 Ill 324). That intent need not be an express one, and it may be inferred from the acts of the accused and the circumstances of the assault, as well as from express words. (People v. Hiller, 7 Ill2d, 465; People v. Marino, 388 Ill 203).

In People v. Anderson, 382 Ill 316, 47 NE2d 718 (1943) the defendant was charged with assault with intent to rape. The following evidence was brought forth at the trial. The complainant, at 12:30 a. m. was walking toward her home, some five blocks away. The defendant approached her "stealthily from the rear," threw his arms around her, put one hand over her mouth and commanded her to keep quiet. She jerked loose, started screaming and struggling. The defendant then pushed her into the prairie adjoining the sidewalk and threw her into the weeds. She screamed again. He got on top of her and told her to keep quiet, tried to shut her mouth and at the same time put his hand in her mouth whereupon she bit his little finger. She again

350

screamed and at this juncture the occupants of a passing automobile were attracted and the defendant ran away. The court commented that because the victim was carrying a purse and defendant did not attempt to take or steal it, robbery was not his motive. The conviction was upheld, the court finding that defendant's position and his acts demonstrated that he intended to commit rape and to use such force as might be necessary to overcome resistance.

The reviewing court in People v. Mayer, 392 Ill 257, 64 NE2d 372 (1946), considered the sufficiency of a victim's testimony to sustain a verdict of guilty where the specific intent to rape was an essential element of the crime charged. She said she alighted from a bus at about 11:10 p. m. and proceeded to walk toward her home two and a half blocks away. The defendant also got off and walked "nearly even" with her. As she proceeded up the driveway of her home the defendant jumped upon her back, cupped his hands over her mouth, threw her to the ground and kicked her in the stomach. Her clothes were torn and stained and she finally succeeded in calling her father. The defendant then fled. The evidence showed her nose was bleeding and her face scratched. The court, on page 259, said:

> The victim was a woman; she was a stranger to the defendant; the assault was made during the night, and in the seclusion of a driveway leading from the street to the house. The assault was violent; the prosecutrix was thrown to the ground; her clothes were torn and stained; and the assault ceased only when the father came from the house in response to the screams of the daughter. Under these circumstances, does the law require the offense to be limited to assault and battery because the intent was not voiced in language, or the victim had not been sufficiently overcome for the assailant's

351

physical acts to more completely manifest his intention? We think, in determining the question of intent, the jury had the right to consider the experience of mankind. Law and education has not completely eradicated the evil instinct of some men to assault women. The survival of this evil instinct is recognized by the law, which permits a jury to convict, in cases of this kind, upon the uncorroborated testimony of a woman, if, from the circumstances, the jurors are satisfied of the defendant's guilt beyond a reasonable doubt (citing authorities . . .).

It is for the jury to determine the intent.

■ We are of the opinion that the uncontradicted facts and circumstances in the instant cause are sufficient to support the trial judge's finding that the specific intent essential to the crime charged was proven. Bush, and those cases reversing the convictions for failure to prove the intent, were cases in which the attempt consisted of indecent proposals, undue familiarity or insulting conduct without an assault which, either from its violence or threats accompanied by acts, indicated an attempt to overcome the victim in spite of resistance. In situations such as we find here, where the assault is violent, hostile and not in the nature of persuasion, the assault together with the threats, circumstances and other acts, manifest the purpose and establish the intent. People v. Maher, 377 Ill 488, 36 NE2d 735 (1941).

The proof supports the judgment and the trial court is affirmed.

Affirmed.

BURMAN and MURPHY, JJ., concur.